UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES HINKLEY,<br><br>                     Plaintiff,<br><br>          v.<br><br>ROD SHUMATE,<br><br>                     Defendant. | No.  4:14-CV-05029-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

   Before the Court, without oral argument, is the Defendant Rod Shumate's Motion for Summary Judgment and Memorandum in Support, ECF No. 42. Plaintiff James Hinkley alleges that Mr. Shumate, as the manager of Mr. Hinkley's prison unit, was deliberately indifferent to his "basic need of sleep condition," causing wanton and unnecessary pain and injuries in violation of the Eight Amendment. ECF No. 8 at 10. Specifically, Mr. Hinkley claims that his bed-mat was too thin, and he was injured as a result of Mr. Shumate's failure to provide an additional, or new, mat. *Id.* at 6–11. Mr. Shumate counters that he is entitled to summary judgment because he protected by qualified immunity. ECF No. 42 at 4. The Court agrees with Mr. Shumate, and finds that qualified immunity bars Mr. Hinkley's claims for damages. The Court further finds that Mr. Hinkley is not entitled to injunctive relief.

ORDER GRANTING SUMMARY JUDGMENT **-** 1

I. **PROCEDURAL HISTORY**

In March 2014, Mr. Hinkley originally brought this civil rights action as an inmate of Washington State Penitentiary against multiple prison officials, including Mr. Shumate. ECF No. 1.  In his amended complaint, Mr. Hinkley alleged that the prison unit's hygiene customs and bedding violated his rights under the Eighth Amendment. ECF No. 8. This Court dismissed the action, ECF No. 12, and the Ninth Circuit Court of Appeals affirmed dismissal for all but one claim, stating:

> Dismissal of Hinkley's inadequate bedding claim was proper as to [the other defendants] because Hinkley failed to allege facts sufficient to show that these defendants knew that the prison's single-mat policy presented an excessive risk of harm to Hinkley's health and disregarded that risk.
> However, dismissal of Hinkley's inadequate bedding claim as to defendant Shumate was premature because Hinkley alleged that Shumate failed to respond to his request for an additional mat. These allegations, liberally construed, were sufficient to warrant ordering Shumate to file an answer.

*Hinkley v. Shumate*, 616 F. App'x 269, 270 (9th Cir. 2015); ECF No. 22 at 2–3 (citations and internal quotations omitted).  This Court therefore limits its analysis to whether Mr. Shumate's failure to provide an additional, or new, bed-mat entitles Mr. Hinkley to relief.

II. **FACTS OF THE CASE[1]**

In early 2012, Mr. Hinkley was placed in the Washington State Penitentiary's BAR Unit. ECF No. 8 at 6.  Mr. Shumate was the BAR Unit manager, and responsible for setting standards within Mr. Hinkley's

---

[1] The Court views and recites the facts in the light most favorable to Mr. Hinkley, as he is the party opposing summary judgment. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). *But see*, LR 56.1(d) (allowing the Court to assume accuracy of moving party's claimed facts which are left uncontroverted).

ORDER GRANTING SUMMARY JUDGMENT **-** 2

unit. ECF No. 8 at 5.  The standard-issue mat is listed as three-and-a-half inches thick, ECF No. 43-1 at 3, but Mr. Hinkley alleges that his mat, which was placed on a concrete bed, was as low as a quarter-inch in the middle. ECF No. 8 at 6.  As discussed below, during his stay in the BAR Unit, Mr. Hinkley repeatedly received treated for various medical conditions and injuries, many of which he now claims were caused by the inadequacies of his bed-mat.

In late 2012, Mr. Hinkley suffered from exercise-induced rhabdomyolysis and leg pain as a result of doing too many squats during a workout. ECF No. 43-1 at 35.  Then, in May 2013, he was treated for a left shoulder strain which, according to his medical records, occurred while piling rocks for the fire in the sweat lodge, *id.* at 48, though Mr. Hinkley now alleges his bed-mat caused the injury. ECF No. 8 at 7.

After a year, late in 2013, Mr. Hinkley reportedly submitted a kite to Mr. Shumate requesting a new mat because of pain, but the kite went unanswered. *Id.* at 51.  Then, in early 2014, Mr. Hinkley submitted a formal complaint, asking for a different mat because of pain in his shoulders, knees, and back. *Id.* at 41-42.  However, Mr. Hinkley's complaint was found "nongrievable" because he had not submitted the complaint within 20 days of the "incident." *Id.* at 41–43.  Still, the Grievance Program Manager informed Mr. Hinkley: "You might bring the issue up to your tier representative.  If it has affected you to the extent to cause pain, you can kite your medical provider." *Id.* at 43.

Near that same time, Mr. Hinkley reported to medical with a bruised knee, and medical issued him an additional blanket to pad the wall and "see if it helps to prevent injury from restless leg problems." ECF No.

8 at 49–50. Medical also informed Mr. Hinkley that he should submit another kite request for a new mat. ECF Nos. 8 at 52; 43-1 at 62. Mr. Hinkley reportedly submitted a second medical kite to Mr. Shumate that also went unanswered.[2] ECF No. 8 at 52.

By mid-2014, shortly after he had filed this action, Mr. Hinkley was receiving iron treatment which helped his restless leg syndrome, but complained that he was still getting "intermittent" pain while working or sleeping in his joints — specifically his knees, shoulders, and hips. ECF No. 43-1 at 74, 85. When medical noted "no palpable, no visible abnormality," they ordered x-rays and blood tests. ECF No. 43-1 at 85. The report for the resulting five views of Mr. Hinkley's cervical spine stated:

> FINDINGS: Spinal alignment is normal.  No acute cervical spine fractures are seen.  Vertebral bodies are normal in height.  There is no suspicious lytic or scierotic osseous lesion.  The paraspinal soft tissues are unremarkable.
> There is minimal disk height loss at C5-C6, indicating disc degeneration.  Oblique vies show no definite bony neural foraminal stenosis.

ECF No. 43-1 at 87. The report for two views taken of Mr. Hinkley's right tibia fibula found: "No right fibial or fibular fracture or dislocation.  The ankle mortise is aligned.  No significant degerative or erosive changes of the knee medial and alteral compartment or tibiotalar joint.  No suspicious osseous lesion."  ECF No. 43-1 at 88. The blood test results similarly showed his erythrocyte sedimentation rate and rheumatoid factor were "both normal." ECF No. 43-1 at 90.

---

[2] Mr. Shumate states that he does not recall ever receiving either of the kites Mr. Hinkley claims to have sent him.  ECF No. 27 at 3.

ORDER GRANTING SUMMARY JUDGMENT - 4

After reviewing the test results and x-rays, the treating physician ordered "no specific medication nor follow up," but indicated he would consider more x-rays in the future if Mr. Hinkley kept reporting pain. CF No. 43-1 at 90.

In February 2015, Mr. Hinkley was transferred out of the Bar Unit. ECF No. 43-0 at 2. He is currently housed at the Lincoln/RAP Work Release Facility. *Id.*

### III. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although a court views the evidence in the light most favorable to the nonmoving party while making this determination, the party resisting summary judgment "may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial." *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). For the reasons discussed below, the Court finds Mr. Hinkley failed to establish any genuine dispute as to the material facts of his case.

**B. Eighth Amendment Claim for Deliberate Indifference**

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

ORDER GRANTING SUMMARY JUDGMENT **-** 5

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As a preliminary matter, the Court notes Mr. Shumate's claim would obviously fail if viewed as merely challenging the overall comfort of his mat. "The Eighth Amendment requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (internal quotations and citations omitted) cert. denied, 135 S. Ct. 946 (2015). Further, Mr. Hinkley's claim cannot reasonably be based on deprivation of sleep, as he consistently reported sleeping well. *See*, *e.g.*, ECF No. 43-1 at 50, 52, 60; *cf. Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs. . . ."). Mr. Hinkley's claim is linked, however, to his restless leg symptoms and various injuries. The Court therefore analyzes Mr. Shumate's liability in the context of Mr. Hinkley's medical needs and treatment.

Mr. Hinkley's kite requests — when viewed in his favor — arguably imply Mr. Shumate was aware of both Mr. Hinkley's medical issues and his requests for an additional mat. The Court need not decide, however, whether depriving Mr. Hinkley of an additional mat was "sufficiently serious" to qualify as a denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). Instead, the Court need only determine whether Mr. Shumate is entitled to qualified immunity.

**C. Qualified Immunity**

If a prison official reasonably believes his conduct complies with the law, qualified immunity applies; an official must have "fair

ORDER GRANTING SUMMARY JUDGMENT **-** 6

warning" that an action is unconstitutional before civil liability attaches. *See Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013). The official's immunity hinges on the objective legal reasonableness of his action, considering the then-existing legal standards. *Id.* Thus, to defeat Mr. Shumate's defense of qualified immunity, Mr. Hinkley must show "first, that he suffered a deprivation of a constitutional or statutory right; and second that such right was clearly established at the time of the alleged misconduct." *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).

"To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right." *Id.* at 1090-91 (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)). A plaintiff need not find a case directly on point, but the existing precedent must have placed the unconstitutionality of an official's actions beyond debate when viewed in the specific context of the case at hand. *Hamby*, 821 F.3d at 1090-91. As such, Mr. Hinkley needed to prove the "precedent on the books" at the time should have made clear to Mr. Shumate that his actions violated the Constitution. *See id.*

Here, no legal precedent suggested — let alone clearly established — that withholding a new or additional bed-mat would amount to a constitutional violation. *See, e.g.*, *Chappell*, 706 F.3d at 1061 (analyzing cases involving mattress deprivation and concluding there was no clearly established law). Moreover, if Mr. Shumate had delved into legal research and found the unreported case *Finley v. Neven* — though not binding precedent — it would have still supported a

ORDER GRANTING SUMMARY JUDGMENT - 7

reasonable belief that his actions were lawful. *See* 388 F. App'x 694, 695 (9th Cir. 2010) ("[P]risoners do not have a clearly established right to sleep on a comfortable mattress.").

Mr. Hinkley's medical issues are certainly relevant to the Court's analysis. S*ee Hamby*, 821 F.3d at 1094–95 ("[O]ne can imagine a situation where the officials' conduct is so egregious that no one would defend it, even if there were no prior holdings directly on point."). But the situation here was not so extreme. Medical repeatedly treated Mr. Hinkley, yet no physician ever linked Mr. Hinkley's symptoms to his mat, let alone indicate it might "result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (citations and quotation marks omitted). Given no medical opinion or directive that the bed-mat was the cause of Mr. Hinkley's pain, Mr. Shumate could have reasonably believed the mat affected comfort, but did not create an "excessive risk" to Mr. Hinkley's health or safety. *See Farmer*, 511 U.S. at 837.

Most people — especially given Mr. Hinkley's symptoms — would prefer more padding between themselves and a concrete bed. Nonetheless, even if one decides Mr. Shumate erred by ignoring or refusing Mr. Hinkley's requests, this is far from finding Mr. Shumate should have believed he was violating the Constitution. *Cf. Hamby*, 821 F.3d at 1095 (There is a "vast zone of conduct that is perhaps regrettable but is at least arguably constitutional. So long as even that much can be said for the officials, they are entitled to qualified immunity."). Thus, the Court finds qualified immunity applies, and Mr. Shumate is not liable for damages.

**D. Injunctive Relief**

"Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012). Injunctive relief is nonetheless inappropriate here, however, because Mr. Hinkley has moved to a different facility "and there is no evidence that he is likely to again be subject to the challenged conditions." *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 990 (9th Cir. 2014); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, [a prisoner] is no more entitled to an injunction than any other citizen . . . .").

## IV.  CONCLUSION

Even assuming *arguendo* the Court could find Mr. Hinkley's bed-mat was so inadequate as to violate the Eighth Amendment, the law was not clearly established such that Mr. Shumate would have had fair notice of as much. Therefore, the Court finds summary judgment is appropriate; Defendant Shumate is protected by qualified immunity and Mr. Hinkley lacks standing to seek the requested injunctive relief.

////

////

///

///

//

/

ORDER GRANTING SUMMARY JUDGMENT - 9

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment and Memorandum in Support, **ECF No. 42**, is **GRANTED.**
2. The Clerk's Office is directed to enter judgment in Defendant's favor.
3. All pending dates and deadlines are **STRICKEN**.
4. The file shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and to Mr. Hinkley.

**DATED** this ___8th____ day of August 2016.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2014\Hinkley;14-CV-5029.GrantSJ.LC1.docx
ORDER GRANTING SUMMARY JUDGMENT **-** 10